Kent JONES, Sr., Ind. & as Admin. of the Estate of Bridgett G. Jones, his wife, Plaintiff,

v.

Officer Charles CHIEFFO & Commissioner Willie Williams & Mayor W. Wilson Goode & City of Philadelphia & City of Philadelphia Police Dept., Defendants.

Civ.A.No. 91–6234.

United States District Court, E.D. Pennsylvania, C.D.

Sept. 1, 1993.

Pennsylvania against defendants Officer Charles Chieffo ("Chieffo"), Commissioner Willie Williams ("Commissioner"), the City of Philadelphia Police Department ("Police Department"), Mayor W. Wilson Goode ("Mayor"), and the City of Philadelphia ("City"). Currently before me is defendants' motion for summary judgment (Document No. 26).

■ The jurisdiction of this Court is founded upon the existence of a federal question pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Upon consideration of the motion, as well as the pleadings, affidavits and discovery of record, and for the reasons which follow, I will grant defendants' motion for summary judgment of the 42 U.S.C. § 1983 claim.[1] Having dismissed plaintiffs' federal claims, I will decline to exercise my discretion to retain jurisdiction over their state claims and, thus, will dismiss plaintiffs' state law claims without prejudice.

## II. BACKGROUND

This case arises out of a high speed automotive police chase and subsequent automobile collision which caused the death of plaintiff Bridgett G. Jones and personal injuries to her husband, plaintiff Kent R. Jones, Sr.

Richard C. Ferroni, Matty & Ferroni, Philadelphia, PA, for plaintiff.

Jeffrey M. Scott, City Solicitor's Office, Philadelphia, PA, for defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

### I. INTRODUCTION

On October 4, 1991, Plaintiff Kent Jones, Sr. ("Jones") filed claims, on behalf of himself and his wife, under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 alleging violations of his and his wife's Fourth and Fourteenth Amendment rights, and various state law claims under the laws of the Commonwealth of

Except where noted, the following facts are taken from the uncontradicted testimony of Chieffo and the relevant records of the events. On November 12, 1989, at approximately 2:00 a.m., Chieffo, a fourteen-year veteran of the Philadelphia Police Department, observed three vehicles speeding through the intersection of Lena and Coulter Streets in the City of Philadelphia. In response, Chieffo ceased his present activities and directly followed the three speeding automobiles. Officer Chieffo advised headquarters, via police radio, that he was in pursuit of three vehicles which were chasing each other at high speeds.

1. Section 1981 requires plaintiffs to prove that they are members of a protected class. Plaintiffs have not alleged in the complaint, nor produced evidence to show that they are in a class relevant to any section 1981 claims under any of the facts of this case. Accordingly, summary judgment is granted as to plaintiffs' 42 U.S.C. § 1981 claim. If plaintiff Jones believes he can sustain a claim under section 1981, he can seek relief from this Order. *See Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs*, 822 F.Supp. 1181, 1182 (E.D.Pa.1993).

Sergeant Michael Vassallo, Chieffo's supervisor, monitored the pursuit by radio. Plaintiffs allege that at no time during the pursuit did Chieffo inform headquarters of the reasons for the pursuit, in direct violation of police directive 45.

The pursuit continued south on Germantown Avenue proceeding approximately 2.2 miles through city streets. While traveling on Germantown Avenue, Chieffo observed a gun shot being fired from the second vehicle in the direction of the lead vehicle. Upon seeing and hearing the gun shot, Chieffo activated his emergency lights and siren, but the siren was not operational.[2]

When the vehicles reached the intersection of Germantown and Hunting Park Avenues, Chieffo lost sight of one of the vehicles. The other two vehicles were soon two blocks ahead of Chieffo's vehicle so Chieffo shut off his dome lights and abandoned pursuit.[3]

While Chieffo's police vehicle was decelerating, Chieffo observed one of the fleeing vehicles down the street proceed through the intersection of Broad Street and Roosevelt Boulevard, running a red light, and subsequently striking the vehicle operated by plaintiffs. The collision resulted in severe injuries to both Jones and his wife, Bridgett Jones, ultimately, causing her death.

Plaintiffs now seek a judgment in excess of $75,000 for each of the following counts charging that 1) the defendants willfully, deliberately, intentionally and maliciously violated the rights of plaintiffs, as secured by the Fourth and Fourteenth Amendment to the United States Constitution thereby violating 42 U.S.C. §§ 1981, 1983; 2) defen-

dants' negligent, willful, wanton and gross conduct was the proximate cause of plaintiffs' injuries resulting in damage thereby supporting a claim for negligence; 3) defendants' negligent, willful, wanton and gross conduct caused plaintiffs to suffer severe emotional distress and extreme mental pain and suffering; 4) the actions of the defendants support a reward of punitive damages to serve as a deterrent to others who would commit similar acts in the future; 5) defendants' actions support a claim for wrongful death under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. 8301; 6) defendants' actions caused plaintiff-decedent severe, unrelenting and excruciatingly painful injuries forming the basis of a claim under the Pennsylvania Survival Act, 42 Pa.C.S.A. § 8302; and that 7) defendants' actions formed a basis for punitive damages under the Pennsylvania Survival Act.

## III. *DISCUSSION*

The analysis of a summary judgment motion in federal court is set forth in Fed.R.Civ.P. 56. Rule 56(c) states that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

---

**2.** Chieffo testified that he had no previous knowledge that the siren was not operational until he attempted to activate it after observing the gun fire. Plaintiffs have presented no contrary evidence.

**3.** Plaintiffs assert that Chieffo's description in his deposition of the events that occurred that evening is at odds with his actions. In support of their contention, plaintiffs refer to the police transcript of Chieffo's conversation with headquarters when he called for authorization to join in the pursuit. The transcript illustrates that Chieffo did not communicate his reason to headquarters for commencing the pursuit, nor did he announce that he terminated the pursuit two blocks before the site of the accident. Moreover,

plaintiffs present the deposition of Officer Lawrence Ritchie ("Ritchie"), who witnessed the chase near its climax and noted that the distance between the car Chieffo was driving and the cars he was chasing was much shorter than the two blocks Chieffo reported in his deposition. Ritchie also stated that the overhead lights on Chieffo's car remained lit when Chieffo stopped the car at the scene of the accident and intimated that Chieffo did not in fact abandon the pursuit as he claimed. I do not find these arguments to contradict the undisputed material facts upon which I have applied the law, *infra*, and, thus, I find these disputed facts to be unrelated to the disposition of this case.

S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 93–95 (1983)). In addition, a dispute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

 Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. of Newark v. Du Fresne*, 676 F.2d 965, 969 (3d Cir.1982). In addition, the evidence of the non-moving party is to be considered as true, and justifiable inferences arising from the evidence are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. Yet if the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11. The non-moving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

### A. *Constitutional Claims*

 I shall begin my analysis by addressing plaintiffs' constitutional claims. First, I shall determine whether defendants' acts amount to an unreasonable seizure, thereby depriving plaintiffs of their constitutional rights arising under the Fourth Amendment. Second, I shall consider whether defendants' acts deprived plaintiffs of their life, liberty, or property, thereby amounting to a violation of the Fourteenth Amendment. In any section 1983 action, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) that conduct deprived a person of his rights, privileges, or immunities

secured by the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds by, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). As the first prong is clearly met, the following discussion addresses only the second.

### 1. Officer Chieffo

### a. Fourth Amendment Claim

 The Fourth Amendment to the Constitution provides in part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Defendants argue that they are entitled to summary judgment because plaintiffs cannot show that Chieffo's actions amounted to a seizure under the Fourth Amendment. "[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon)." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989). To constitute a seizure under the Fourth Amendment, plaintiffs must establish that "there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* (emphasis in the original) [4]; *see California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (citing *Brower*, 489 U.S. at 593, 109 S.Ct. at 1378).

 Defendants' argue that Chieffo did not intend to cause the accident and therefore did not "seize" plaintiffs. In *Brower*, the Court addressed a hypothetical situation similar to the facts in the case at bar. The Court observed that because a seizure requires that the means be intentionally ap-

---

**4.** In *Brower*, the United States Supreme Court found that a roadblock consisting of an eighteen-wheel truck placed completely across the highway in the path of petitioners' decedent constituted a seizure within the meaning of the Fourth

Amendment because "a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." 489 U.S. at 598, 109 S.Ct. at 1382.

plied, a seizure cannot be found in a situation where a police chase results in a suspect unexpectedly losing control of his car and crashing. The Court stated that where a police chase results in a collision, a seizure is not committed because,

> [t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though [the suspect] was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure ... We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

*Id.* at 597–99, 109 S.Ct. at 1381–82.

In a case with facts strikingly similar to those of the instant case, *Roach v. City of Fredericktown, Missouri,* 882 F.2d 294, 296 (8th Cir.1989), the Eighth Circuit held that no seizure occurred. In that case, a police officer pursued a fleeing car outside its jurisdiction, with its red flasher lights on, but *without its siren,* in direct violation of policy and state law. The pursuit resulted in a collision between the fleeing car and an automobile occupied by innocent bystanders. The court, applying the holding in *Brower,* held that the officer's actions did not amount to a seizure of the injured innocent bystanders because the officer did not intend for the pursuit to end by means of an accident, therefore, the court found that no Fourth Amendment violation occurred. *Roach,* 882 F.2d at 296.

A similar result was reached in *Jones v. Sherrill,* 827 F.2d 1102, 1105 (6th Cir.1987), where the Sixth Circuit held that a high-speed pursuit of an offender which terminates in a collision involving an innocent party does not constitute a seizure of that innocent party because no physical force or show of authority on the part of the officer caused the restraint of the bystander's liberty. *Id.; see Galas v. McKee,* 801 F.2d 200, 202–03

(6th Cir.1986) (no seizure of offender's liberty when pursuit ended in an accident).

In *Jones,* innocent occupants ("the Jones") of a car traveling on a two-way road were struck by an individual ("Sherrill") driving in the opposite direction whom the police were pursuing. *Id.* at 1103–04. The police were trying to stop Sherrill for driving in an unsafe manner, and pursued him in a nine mile high speed chase. *Id.* at 1104. Sherrill's car crossed the center line of the highway, collided with the Jones' car, and killed Mr. Jones. *Id.* The court acknowledged that a high speed pursuit of a traffic offender, which terminates in a collision does not constitute a seizure of the offender when the offender's freedom of movement is not restrained by a governmental show of authority. *Id.* As pertaining to the innocent bystander, the court stated,

> Whether Jones, the innocent bystander, may challenge the officers' pursuit as an unreasonable seizure presents a slightly different question. We hold, however, that similar reasoning applies, and that the officers' pursuit cannot constitute a seizure of Jones any more than it could of Sherrill. The officers were intending to apprehend Sherrill, not Jones. The restraint on Jones' liberty was caused by the accident with Sherrill and not by any physical force or show of authority on the part of the officers. There was no fourth amendment violation.

*Id.* at 1105–06.

Even when construing the allegations of the complaint and the evidence of record in the light most favorable to plaintiffs, which I must do, plaintiffs have not proffered any facts entitling them to relief for a violation of the Fourth Amendment. Here, as in *Brower,* Chieffo sought to stop the fleeing suspects only by the show of authority represented by flashing lights and continuing pursuit. The termination of both the suspect's and plaintiffs' freedom of movement was caused by a different means—the suspect's entering the intersection and colliding with plaintiffs' car. Plaintiffs' termination of movement was caused by the suspect's impact, not the means that Chieffo meant to apply—flashing lights and continuing pursuit.

Considering *Brower, Jones,* and *Roach,* it is clear that in circumstances like those in this case, a high speed pursuit resulting in a collision will not state a claim for unreasonable seizure under the Fourth Amendment, regardless of whether the party whose movement is terminated is the fleeing suspect or an innocent driver of a third vehicle.[5] Therefore, because plaintiffs' Fourth Amendment claims are based on Chieffo's high speed pursuit of his assailant which ended when the assailant collided with plaintiffs, I find that Chieffo's actions did not amount to a Fourth Amendment seizure of plaintiffs actionable under 42 U.S.C. § 1983 and shall grant summary judgment for the defendants with respect to this claim.

### b. Fourteenth Amendment Claim

To prove a section 1983 claim against defendants, plaintiffs must show available proof that Chieffo's actions deprived them of life, liberty, or property without due process of law. *Jones,* 827 F.2d at 1106. The Supreme Court has held that a state official's mere negligence cannot state a claim for a due process violation under section 1983, stating that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."

*Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Fagan v. City of Vineland,* 1993 WL 290386 at \*12 (3d Cir. August 5, 1993); *Jones,* 827 F.2d at 1106. Although the Court specifically declined to consider the question of whether something less than intentional conduct is enough to trigger the protection of the Due Process Clause, the United States Court of Appeals for the Third Circuit recently settled this issue. In *Fagan,* the Third Circuit pronounced that "the standard of liability under section 1983 for a substantive due process violation in a police pursuit case is whether a pursuing police officer acted with reckless indifference to public safety." *Id.* 1993 WL 290386, at \*12.[6] The Court found that a police officer acts with reckless indifference "if he was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow, and he proceeded in conscious and unreasonable disregard of the consequences." *Id.*

My task is to determine whether a reasonable jury could conclude that Chieffo acted with reckless indifference to public safety, viewing the facts in the light most favorable to the plaintiffs.

Plaintiffs argue that Chieffo acted with reckless indifference because: 1) he violated the existing police directive on police pur-

---

5. Plaintiffs, in their supplemental brief in response to defendants' motion for summary judgment ("Supp. Response"), misapply the standard for a Fourth Amendment seizure as discussed in *Brower.* Plaintiffs argue that in the present case a seizure occurred because, *inter alia,* the defendant Chieffo intended to apprehend a suspect and intended to do so by means of a high speed chase without an operable siren. However, as the Court discussed in *Brower,* the governmental termination of freedom of movement must be through *means intentionally applied.* Thus, when a police officer who is in pursuit of a suspect wants the suspect to stop, the *means* he intentionally applies is "by the show of authority represented by flashing lights and continuing pursuit" and if an unintended crash results, the suspect would be stopped by a different means. *Brower,* 489 U.S. at 597, 109 S.Ct. at 1381–82; *see Yang v. Murphy,* 796 F.Supp. 1245, 1249 (D.Minn.1992) (Fourth Amendment seizures occurred when police officer intended to shoot one suspect but unintentionally shot the other as well).

6. *Fagan* involved a high speed police chase that resulted in a collision between a vehicle driven by the suspect and innocent passersby. The chase began when a police officer observed a car driven with a passenger standing through the car's open T-top roof and waving his arms. The vehicle was not speeding. The police officer accelerated, intending only to give the driver of the vehicle a warning. The officer activated his overhead lights, which caused the vehicle to accelerate and begin the high speed chase. The chase ended in a collision killing and injuring innocent bystanders. *Fagan,* 1993 WL 290386 at \*4–5.

Although the Court established the appropriate standard by which to evaluate police conduct in high speed chases, it did not decide whether the specific conduct complained of amounted to reckless indifference which violated the Fourteenth Amendment. *Id.* 1993 WL 290386, at \*13. Instead, the Court remanded the case to the district court on the issue of reckless indifference. *Id.*

suits [7], 2) he did not pursue with an audible siren—in violation of both police directive and Pennsylvania law, 75 Pa.C.S.A. § 3105 [8], and 3) that upon commencement of the pursuit, he failed to inform the radio dispatcher of the fact that there was a pursuit, the reason for the pursuit, the location, direction and approximate speed of travel, descriptions of vehicle and occupants, information regarding the continuous progress of the pursuit and the location where the pursued vehicle was stopped—in violation of police directive 45.

█ Violation of police pursuit guidelines are not dispositive that a police officer acted with reckless indifference to the public safety. *Fagan,* 1993 WL 290386 at *15. Other factors are also relevant. I must consider the known risks to all those who might be involved, i.e., the officers, fleeing suspects, and bystanders. *Jones,* 827 F.2d at 1106.

7. Plaintiffs allege that defendant Chieffo violated section III(c) of directive 45, adopted on August 26, 1985, which states "THE PROVISIONS OF THE PENNSYLVANIA VEHICLE CODE WILL NOT RELIEVE THE DRIVER OF A POLICE VEHICLE FROM THE DUTY TO DRIVE WITH DUE REGARD FOR THE SAFETY OF ALL PERSONS, NOR WILL SUCH PROVISIONS PROTECT THE DRIVER OF A POLICE VEHICLE FROM THE CONSEQUENCES OF CARELESS DISREGARD FOR THE SAFETY OF OTHERS."

8. 75 Pa.C.S.A. § 3105(c) provides that: "The privileges [permission to exceed the maximum speed limits, etc.] granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department...."

Police directive 45, in effect on November 12, 1989, read as follows: "Police vehicles operated during an emergency response situation will have in operation all appropriate emergency equipment, including emergency lights ... and siren to warn vehicular and pedestrian traffic along the emergency route."

Interestingly, directive 45 was amended on January 21, 1992, now requiring that "Police vehicles that do not contain a working visual signal (light bars/or red lights) AND audible signal WILL NOT engage in emergency vehicle operations or in vehicle pursuits. State law requires these signals for emergency driving."

9. Plaintiffs attack the credibility of Chieffo's uncontradicted statement which has support in the record, but plaintiffs do not appear to present any contrary evidence that Chieffo saw or heard gun shots fired from one of the vehicles. Plain-

In the instant case, Chieffo observed three vehicles traveling at high speeds through an intersection controlled by a four way stop sign. Chieffo followed the automobiles until he saw a muzzle flash and a gun shot.[9] Upon seeing and hearing the gun shot, Chieffo activated his emergency lights and siren, but the siren was not operational.

█ As required by law, I shall proceed to examine whether Chieffo's actions constitute reckless indifference. The potential danger created to bystanders by the three speeding vehicles and the firing of a weapon could logically justify Chieffo's engagement in the high speed pursuit. It could be concluded that he quite reasonably attempted to stop the vehicles and apprehend the individuals; and that Chieffo made a choice to protect the public safety by attempting to apprehend obviously dangerous suspects.[10] *See*

tiffs' only noteworthy references to the gun shots are their statement that "Officer Chieffo confirmed in deposition that he never made any attempt to advise police radio of the fact that he heard and saw gunshots fired from one of the vehicles," plaintiffs' response to defendants' motion for summary judgment ("Response"), at 5, and their expert's opinion questioning Chieffo's credibility regarding the existence of any gun shots. Response, exhibit 8. The expert opinion does not change the law and does not raise a material issue of fact.

However, the evidence submitted by defendant of the radio transmissions appears to confirm that Chieffo did see gun shots. According to the transcript, at approximately 1:59:47 AM, Chieffo finally informed the dispatcher, "I was chasing three cars, one vehicle was firing shots at the other two, that's what this is all about." Defendant's motion for summary judgment ("Motion"), exhibit B at 2.

Moreover, Chieffo's deposition supports defendants' assertions that shots were fired. Chieffo says "At a point where they were approximately I'd say maybe a block away from me on Germantown Avenue, I observed and heard a shot, a muzzle flash, a shot from the second vehicle, the gray vehicle." Defendants' supplemental brief in support of defendants' motion for summary judgment ("Supp. Motion"), exhibit B at 129. In response to a question as to how many shots Chieffo heard, he responded, "two shots.... One at Germantown and Penn, the second at Germantown and Logan." *Id.* at 157.

10. Chieffo stated, "With the speed that they were traveling and the closeness of the intersection, I have no idea how they were able to complete the turn without being involved in some kind of auto

*Jones,* 827 F.2d at 1107. Chieffo's choice to pursue the vehicles and to prevent them from causing any future harm without the use of his siren and without explaining his reasons for the pursuit may have violated state law, police directives, or even constituted a common law tort [11], but it may not state a claim for a constitutional deprivation of due process. *See Jones,* 827 F.2d at 1107; *Fulkerson v. City of Lancaster,* 801 F.Supp. 1476, 1481 (E.D.Pa.1992), *aff'd,* 993 F.2d 876 (3rd Cir.1993) ("plaintiffs have shown, at most, evidence that the pursuing officer may have acted imprudently in ... driving at too high a speed. Prudence and imprudence are the subject of negligence law, not due process, and this claim cannot succeed under § 1983").

The Third Circuit has held that "[w]hen a police officer decides to engage in a high speed pursuit, he is deciding, in effect, that the need to stop or apprehend a person is so great that it justifies placing the public in immediate danger." *Fagan,* 1993 WL 290386 at *13. I conclude upon analysis that Chieffo was faced with a danger to the public created by three cars driven at high speeds with gun shots being fired.[12] His decision to engage in the high speed pursuit reflected his decision that the need to apprehend the suspects outweighed the danger he created by engaging in a high speed pursuit. I find that Chieffo's conduct does not rise to reckless indifference to the public safety, rather, it indicates a choice to protect the public through the means he found to be appropriate.[13] This behavior is not the type of "oppressive and arbitrary conduct" that the doctrine of substantive due process is meant to prohibit. *See id.* at *28. Therefore, defendants' motion for summary judgment as to plaintiffs' Fourteenth Amendment claims under 42 U.S.C. § 1983 against Chieffo will be granted.

**2. Commissioner Willie Williams, Mayor W. Wilson Goode, City of Philadelphia and City of Philadelphia Police Department.**

**a. Fourth Amendment**

According to *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), and *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989), a municipality can be liable for one of its policies or customs only if that policy or custom causes a violation of the plaintiff's constitutional rights. *See Fagan,* 1993 WL 290386 at *16. Because I have found that plaintiffs did not suffer a Fourth Amendment "seizure" as a result of the collision with the assailants, and, therefore, have not suffered a violation of their constitutional rights, the City of Philadelphia and its agents cannot be liable under 42 U.S.C. § 1983. Defendants' motion for sum-

---

accident due to the rate of speed they were traveling." Supp. Motion, exhibit B at 122.

**11.** I express no opinion regarding the validity of any of these claims.

**12.** It is significant that unlike *Fagan,* where police officers started the high speed chase by pursuing a minor traffic offender who was not speeding, Chieffo did not actively create the danger that resulted in plaintiffs' injuries. Here, the three automobiles had been traveling at a high rate of speed prior to Chieffo's involvement. In *Fagan,* the Court found that the danger to plaintiff would not have occurred had not the police first pursued him. The Court noted, "in a police pursuit case, 'the [plaintiff] alleges that the state affirmatively and directly changed the status quo ... by pursuing an allegedly unconstitutional chase.'" *Fagan,* 1993 WL 290386 at *14 n. 5. That is not the case here, as the speeding vehicles, not Chieffo, created an immediate danger ultimately compelling Chieffo to act.

**13.** My decision is supported by *Jones,* 827 F.2d at 1106, which was specifically recognized by the Third Circuit for using a standard of 1983 liability which closely resembled that of this Circuit. *Fagan,* 1993 WL 290386 at *14. In *Jones,* police attempted to stop a car that was being driven in an unsafe manner. The officers undertook a high speed pursuit that ended in a fatal collision. In holding that no liability existed under section 1983, the court stated,

[t]he complaint does not allege that the police officers were engaged in a reckless and dangerous joy-ride for no good reason. The officers observed a car being driven in a dangerous manner.... Rather than allowing the car to continue, possibly causing more harm, the officers followed a policy of pursuing the vehicle at the speed necessary to apprehend it. This type of pursuit is simply not the kind of outrageous conduct or arbitrary use of government power which can state a section 1983 claim under [our precedent].

*Jones,* 827 F.2d at 1107.

mary judgment as to plaintiffs' claim under 42 U.S.C. § 1983 for a violation of their Fourth Amendment rights will be granted.

### b. Fourteenth Amendment

#### 1. Commissioner Willie Williams, Mayor W. Wilson Goode, in their individual capacities

Plaintiffs suffered the kind of harm—a deprivation of life or liberty—which the Constitution protects against. *Fagan*, 1993 WL 290386 at *17. Therefore, for purposes of a summary judgment motion as to Commissioner Willie Williams and Mayor W. Wilson Goode, I must decide whether plaintiffs have shown that there exists a triable issue as to " 'whether the *defendant[s']* behavior deprived the Plaintiff[s] of [their life or] liberty interest.' " *Chudzik v. City of Wilmington*, 809 F.Supp. 1142, 1147 (D.Del. 1992) (quoting in part *Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 181 (D.Del. 1989) (emphasis in the original)).

In the instant case, plaintiffs have failed to identify either defendant as being present at the station or at the scene during the pursuit. Nor do plaintiffs allege any affirmative knowledge or active involvement by these defendants. Rather, plaintiffs' claims appear to be based on the theory of supervisory responsibility.[14]

Plaintiffs' allegations do not allege conduct on the part of defendants that satisfies the Third Circuit's specific standards for the imposition of supervisory liability. *Chudzik*, 809 F.Supp. at 1147. The Third Circuit has held that "a person is not the 'moving force [behind] the constitutional violation' of a sub-ordinate, unless that 'person' ... has exhibited deliberate indifference to the plight of the person deprived." *Id.* (citations omitted). "To hold a supervisory official liable, the plaintiff must: (identify with particularity) what the supervisory official failed to do that demonstrates his deliberate indifference; and (2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." *Id.*

Plaintiffs have not proffered any factual support to establish that the Mayor was aware of or involved in the alleged de facto policy of allowing police officers to engage in high speed pursuits without proper and adequate warning devices. Plaintiffs have also not offered factual support to identify with particularity that the Commissioner acted with deliberate indifference. *See* discussion, *infra.*

Because plaintiffs have no factual basis to support their claims that the Mayor or the Commissioner acted with deliberate indifference in their supervisory capacity, or that the Mayor or the Commissioner personally directed the unlawful conduct or had actual knowledge of and consented to that conduct, summary judgment is granted as to the section 1983 claim against the Mayor and the Commissioner in their individual capacities.[15]

#### 2. City of Philadelphia, City of Philadelphia Police Department, and Officer Chieffo, Commissioner Willie Williams, Mayor W. Wilson Goode, in their Official Capacities

It is well established that a municipality cannot be held liable under section

---

**14.** As to the Commissioner, plaintiff alleges only that he has responsibility for administering the day-to-day functions of the Police Department and supervising the activities of police department personnel. Plaintiff later alleges that "police equipment and vehicles were in poor operating condition and that officers of the police force were routinely required to operate equipment and vehicles that were not adequately maintained and not suited for the equipment and vehicles intended purposes" and that "... those activities were well known to all the defendants and said defendants took no measures to ameliorate or change conditions...." Complaint at ¶ 22.

The Mayor is sued because "at all times mentioned herein [he] was acting as the agent, servant, workman, and/or employee of said City of Philadelphia acting within the course and scope of his employment.... it is the duty of the Mayor to preserve order in the City of Philadelphia, to enforce said ordinances and regulations, to remove nuisances, to exact faithful performance of the duties of the police officers appointed, and to perform such duties as shall be vested in his office by law or ordinance." Complaint at ¶¶ 6–7.

**15.** As I have dismissed all the claims against defendants in their individual capacity, plaintiffs' demand for punitive damages is denied. *See Carroll v. Bristol Township*, 827 F.Supp. 332 (E.D.Pa.1993) (claims against defendants in their official capacity under 1983 represents an action against the municipality and the Supreme Court has held that a municipality cannot be held liable for punitive damages under 1983).

1983 based on a theory of respondeat superior. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037; *House v. New Castle County,* 824 F.Supp. 477 (D.Del.1993). To state a claim under 1983 against a municipality, plaintiffs must present evidence that they suffered a violation of their constitutional rights caused by an official policy or custom of the municipality.

The Supreme Court has defined such a municipal policy as a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Fulkerson,* 801 F.Supp. at 1484 (citing *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036). A municipal custom is "such practices of state officials ... [as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law. [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Id.* (citations omitted).

If a city officer causes a deprivation of life or liberty upon another because he was following a city policy reflecting the city policymakers' *deliberate indifference* to constitutional rights, then the City is directly liable under section 1983 for causing a violation of the plaintiffs' Fourteenth Amendment rights. *Fagan,* 1993 WL 290386 at *17. "The municipality's policymakers must be put on notice, whether actually or constructively, of the need for more training, or the need for a different policy, before they can be found deliberately indifferent to that need." *Fulkerson,* 801 F.Supp. at 1483.

The officials who can bind the municipality are those "whose edicts or acts may fairly be said to represent official policy. Which officials have final policymaking authority on a particular issue is a question of state law," considering state statutes, custom

or usage. *Fulkerson,* 801 F.Supp. at 1482 (citing in part *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037).

Plaintiffs allege that the City of Philadelphia had a policy of allowing its police officers to engage in high speed pursuits without proper and adequate warning devices.[16] In support of their claim, plaintiffs proffer evidence to show that police policymakers were aware that 155 of 286 police vehicles were not equipped with an operable siren between August 2, 1988 and February 7, 1989.

Additionally, plaintiffs have shown that city officials knew that the 155 vehicles were permitted to be in service and, plaintiffs allege, "available for all police duties, including pursuits." Response at 12. Plaintiffs also offer evidence to prove that memoranda were on file with the Police Department which indicated that 1) 2.10 pursuits occurred per day; 2) 64% of the pursuits were reported in formal memorandum; 3) 32% of all police pursuits involved some form of accident; 4) 3% of the accidents involved injuries to innocent parties; 5) 1% involved death; and 6) 21% of the accidents involved the vehicle pursued and an innocent party. Finally, plaintiffs cite to various depositions taken after the accident which they allege confirm that the City had a policy of permitting the use of police vehicles with inadequate warning devices.[17]

Plaintiffs have simply failed to provide any evidence tending to suggest that a constitutional injury they suffered was occasioned by a policy or custom of the City or Police Department. Plaintiffs admit that the City had a policy that sirens were required to be used in pursuits. At the time of the accident in question, police directive 45 required, "Police vehicles operated during an emergency response situation will have in operation all

---

16. In plaintiffs' Supp. Response, plaintiffs apparently have dropped their claim that the City's failure to train its officers resulted in a violation of plaintiffs' constitutional rights. *See* Supp. Response at 9.

17. Plaintiff cites to deposition testimony of Chieffo; Sergeant Michael Vassallo, Chieffo's immediate supervisor; Lieutenant Herbert F. Groscsik,

who was responsible for the changes made in the August 25, 1985 directive no. 45; Captain Thomas J. Doyle, Chieffo's commanding officer; Chief Inspector Vincent J. Greene, head of the training bureau; and Lieutenant Stephen J. Smythhead of the Accident Reduction Unit. Plaintiff also provides as support various other studies regarding police pursuits.

appropriate emergency equipment, including emergency lights ... and siren to warn vehicular and pedestrian traffic along the emergency route." Motion, exhibit C at 1.

Plaintiffs essentially argue that although a written policy may have existed prohibiting police cars without sirens from engaging in pursuits, officials in the Police Department knew that these cars were being used in regular service and, therefore, must have known that the cars were being used during pursuits. However, although the evidence indicates that officials knew these cars were being used during regular service, it does not establish that the officers knew or had a policy of permitting these vehicles to be used during pursuits. Captain Thomas J. Doyle, Chieffo's commanding officer in the 14th District, testified that because Chieffo did not have an operable siren, his pursuit was not justified under directive 45 and that he did not want his officers to get involved in a pursuit without an operable siren.[18] Captain Doyle apparently believes the directives prohibit such pursuits.

Moreover, the evidence indicates that rather than creating a custom or policy of using police vehicles without sirens in pursuits, the Department took steps to prevent the possibility of that situation from arising. On February 7, 1989, the Department was informed that of the 286 marked patrol cars in service, 155 did not have sirens installed. Within the next seven months, the Department assigned every technician to police vehicles and entered into a series of "Emergency Contract[s] for the installation of sirens into marked patrol cars." Motion, exhibit A. The Department appeared to take all reasonable steps to reduce the number of police vehicles without sirens.

Although the evidence indicates the City and Police Department had a policy aimed at preventing the use of police vehicles with inoperable sirens in pursuits, some of the depositions demonstrate that officers had different interpretations of the directives and official policy.[19] However, to make a claim under section 1983, plaintiffs must show that a "statement, ordinance, regulation, or decision" is adopted or promulgated by an official with final policymaking authority, not merely that some police officers interpreted rules differently.

Examining all the evidence in the light most favorable to plaintiffs, I conclude that high ranking officials in the Police Department believed that a policy existed prohibiting the use of police vehicles with inoperable sirens in pursuits. I also find that rather than adopting a policy permitting the use of police vehicles with inoperable sirens in pursuits, the Department actively tried to rectify the problem by having the sirens repaired. In any case, plaintiffs have shown no evidence that policymakers in the City or Department knew of or acquiesced in a custom of using police vehicles without sirens in pursuits.

Plaintiffs also fail to establish that the City or Department was deliberately indifferent to their constitutional rights. As noted earlier, to make out a claim of deliberate indifference, plaintiffs must show that a municipality's policymakers were put on notice, whether actually or constructively, of the need for a different policy, before they can be found to be deliberately indifferent to that need. *See Fulkerson*, 801 F.Supp. at 1483.

Plaintiffs fail to proffer any evidence that the City's policymakers were put on notice of any problems involving inoperable sirens and

---

**18.** Captain Doyle did seem to indicate that although it was a violation of directive to be involved in a pursuit without a siren, there were some circumstances where an officer may be warranted to pursue a vehicle, even if the police vehicle had no operable siren. Captain Doyle stated, "I did not want my officer or officers assigned to any district within the City of Philadelphia to get involved in a pursuit with no operable siren, I don't want to say regardless of the situation, but I do want to say for the sake of just getting involved in a pursuit." Response, exhibit 3 at 103. Captain Doyle notes the ultimate responsibility lies with the police officer "who is trying to do the right thing in this particular case." *Id.* at 105.

**19.** Inspector Vincent J. Greene stated, "There was no policy of the department at that time, to my knowledge, a written policy. However, it would be up to the individual officer to evaluate the circumstances." Response, exhibit 4 at 27.

*pursuits.* The statistics plaintiffs cite, discussed *supra*, at page 19, merely establish that officials in the Police Department may have been aware that police pursuits often end in accidents. Plaintiffs have not shown, anywhere, that policymakers or anyone in the City or Police Department knew how many police vehicles with inoperable sirens were involved in pursuits, or more importantly, were involved in pursuits that ended in a collision with an innocent person.

At most, plaintiffs have established that some high ranking individuals in the Police Department knew that police vehicles with inoperable sirens were used in normal service.[20] From this, plaintiffs conclude that police vehicles would "almost certainly be involved in high speed chases lacking the necessary warning equipment mandated by state law and City directive." Response at 14–15. However, because plaintiffs have merely offered a conclusory statement regarding this issue, and proffered no evidence to show that the police force used police vehicles without operable sirens in pursuits, or that City policymakers were put on notice of the frequency of these occurrences or accidents resulting from these happenings, I find that plaintiffs have not shown that the City's policymakers were put on notice of the need for a different policy.

Consequently, I hold that plaintiffs have failed to meet their burden to show that a genuine issue of material fact exists demonstrating that the City had a policy which allowed its police officers to engage in high speed pursuits without proper and adequate warning devices; nor that the City, Police Department, Chieffo, Commissioner, or Mayor, acted with deliberate indifference and,

therefore, defendants' motion for summary judgment must be granted.

**B. *State-law Claims***

Having dismissed plaintiffs' federal claims, I will decline to exercise my discretion to retain this Court's supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. 1367[21], and, thus, will dismiss those claims without prejudice.[22]

**IV. CONCLUSION**

For the foregoing reasons, the motion of defendants Officer Charles Chieffo, Commissioner Willie Williams, Mayor W. Wilson Goode, the City of Philadelphia Police Department, and the City of Philadelphia, for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted. Additionally, summary judgment will also be granted as to plaintiffs' claims alleging violations of their rights under 42 U.S.C. § 1981. Plaintiffs' state law claims shall be dismissed without prejudice.

An appropriate order follows.

***ORDER***

**AND NOW,** this 31st day of August 1993, upon consideration of the motion of defendants Officer Charles Chieffo, Commissioner Willie Williams, Mayor W. Wilson Goode, the City of Philadelphia Police Department, and the City of Philadelphia for summary judgment pursuant to Fed.R.Civ.P. 56 (Documents No. 26), the responses and replies of the parties thereto, and for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the motion of the defendants is **GRANTED. IT IS FURTHER ORDERED** that summary judgment is **GRANTED** *sua sponte* as to plaintiffs' claim

---

20. In response to the question whether a vehicle without a siren should be assigned to a police officer if it can't be used in a pursuit, Captain Doyle responded, "Yes, when we have such a shortage of vehicles that we cannot perform a function out there, we have to do the best we can with what we have." Response, exhibit 3 at 108.

21. 28 U.S.C. 1367(c)(3) states "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if. . . . (3) the district court has dismissed all claims over which it has original jurisdiction."

22. 28 U.S.C. 1367(d) provides that the period of limitations for claims such as plaintiffs' which are dismissed by the United States district court under that statute shall be tolled while the claim is pending in the district court, and for thirty days after dismissal, unless state law provides for a longer tolling period. Under Pennsylvania law, 42 Pa.Cons.Stat.Ann. § 5103, provides that matters dismissed by a federal court for lack of jurisdiction may be refiled in the state courts without regard to the limitations period. *See Fulkerson,* 801 F.Supp. at 1486.

512

under 42 U.S.C. § 1981. **IT IS FURTHER ORDERED** that plaintiffs' state law claims are hereby **DISMISSED** without prejudice. This is a final judgment on all claims.