**MEYER, Joseph W., Appellant**

v.

**RIEGEL PRODUCTS CORPORATION and James River Corporation of Virginia.**

No. 82–5770.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1983.

Decided Nov. 2, 1983.

Rehearing and Rehearing In Banc Denied Nov. 29, 1983.

Michael S. Gordon, Eugene Mittelman (Argued), Mittelman & Gordon, Washington, D.C., for appellant.

Charles A. Reid, III (Argued), Shanely & Fisher, P.C., Newark, N.J., for appellees; McGuire, Woods & Battle, Richmond, Va., of counsel, and W. Carter Younger, Richmond, Va., Mark W. Lynch, Newark, N.J., on the brief.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This case requires us to clarify a critical question concerning the doctrine of equitable tolling in a case charging a violation of the Age Discrimination in Employment Act. Because we believe the district court erred in concluding that as a matter of law plaintiff failed to allege facts that, if proven at trial, could compel a court to equitably toll the applicable statute of limitations, we reverse and remand for trial.

### I.

In late 1977 plaintiff Joseph W. Meyer, then a sixty-one year old resident of Bucks County, Pennsylvania, was employed by defendant Riegel Products Corporation, Inc. (Riegel), a New Jersey manufacturer of specialty paper. Plaintiff had been employed by Riegel for approximately thirty years, attaining the position of Environmental Control Supervisor. His duties encompassed two distinct jobs: responsibility for effluent water quality and air pollution control at three of Riegel's New Jersey mills and supervision of a project engineering group covering mechanical, structural, survey, and process assignment in connec-

tion with all four of Riegel's New Jersey mills. At the time the events of late 1977 transpired, plaintiff's salary was $22,412. He had recently been promoted on July 6, 1977, and his employer did not seem to have been in any way displeased with plaintiff's job performance.

On September 18, 1977, James River Corporation of Virginia (James River), a holding company, had acquired Riegel. Despite contemporaneous assertions leading Riegel employees to believe the contrary, James River in discussions with Riegel management immediately preceding the acquisition expressed plans to dismiss some of Riegel's salaried personnel once the acquisition had been completed. Not surprisingly, therefore, rumors of layoffs began to spread among Riegel employees. On or around November 11, supervisor Robert Swick informed plaintiff that the axe had fallen on him and that he was dismissed effective November 25. Swick added that plaintiff has been the recipient of "a real screwing." Shortly before this notice of dismissal, plaintiff had a conversation with fellow employee Ralph Fisher, who observed that Riegel's older salaried employees had reason to be worried. This conversation, and supervisor Swick's remark as to plaintiff's "real screwing," dovetailed with the pervasive belief among employees that Riegel traditionally exploited older workers. At the time of his dismissal, in short, plaintiff had reason to suspect—and in fact did suspect—that age had played a role in Riegel's decision to let him go four years before he would be entitled to full pension benefits. On November 25 plaintiff worked his last day as a Riegel employee.

Several weeks later, plaintiff wrote to Riegel's Director of Personnel, seeking to ascertain both the reason for his discharge and the status of his pension benefits. At approximately the same time plaintiff mentioned to his daughter his desire to obtain legal advice, and she referred him to Michael Gordon, a Washington attorney who specializes in pension law.

On January 13, 1978, Director of Personnel Griffith replied to plaintiff's inquiry in a letter informing Meyer, among other things, that he had been dismissed "when the Engineering Department was reorganized due to the acquisition of Riegel Products Corporation by the James River Corporation." At approximately the same time this letter was written, defendant Riegel interviewed and hired Thomas E. Linder, Jr., a twenty-eight year old graduate of the University of Maine with a degree in Biology and Chemistry. Linder began work on February 13, 1978.

Throughout January 1978 plaintiff and attorney Gordon had conversations with each other regarding pension benefits, and also discussed the age discrimination issue. In February, after reviewing the information forwarded him by plaintiff, Gordon informed Meyer that it was doubtful they could make out a *prima facie* case of age discrimination. Accordingly, Gordon suggested that plaintiff seek to uncover evidence that might confirm his suspicions, and advised plaintiff to inform him of the results of that endeavor.

On or around May 1, 1978, plaintiff learned from a newsclipping sent him by a former Riegel employee that Thomas E. Linder, Jr., had been hired by Riegel to assume many of the environmental tasks plaintiff had performed. Plaintiff sent the clipping to Gordon, who informed him that in his judgment the basis for an age discrimination suit now existed and that he would therefore file a complaint with the appropriate New Jersey agency. On May 25, 1978, Gordon filed such a complaint with the New Jersey Division of Civil Rights. On September 22, 1978, Gordon then sent the required charge letter to the United States Department of Labor, which received it on September 26. The Department assumed jurisdiction over the charge and held a conciliation conference on March 19, 1979. Defendants declined to conciliate, however, purportedly because of the pendency of the New Jersey investigation.

On December 1, 1978, defendant Riegel filed an answer to the New Jersey complaint, alleging that plaintiff had been dismissed not because of the impending reor-

ganization but because he was incompetent. The answer went on to suggest that James Griffith had used the "reorganization" justification as a way to spare plaintiff's feelings, ease his search for a new job, and make him eligible for severance pay. This allegation of incompetence, coming more than a year after plaintiff's dismissal, appears to have been the first indication that his job performance left anything to be desired. Evaluation forms filled out by plaintiff's superiors, for instance, reveal that they had been quite pleased with Meyer's performance.

In an April 1981 deposition for this action, Personnel Director Griffith offered yet another explanation of the dismissal: plaintiff, he maintained, had not been qualified to handle an environmental control job that Griffith contemplated creating during the time that James River was negotiating to acquire Riegel. The Company, Griffith said, had needed someone "aggressive," someone "vigorous," someone with a background that could handle chemical problems at some of the mills. Such an explanation had never before been mentioned to plaintiff. Nor had it been mentioned in the answer filed in the New Jersey proceedings. Sometime in 1979, after filing his charge letter with the Department of Labor, plaintiff learned from supervisor Swick that in May 1978 Riegel had also hired a much younger employee in the Engineering Department to assume project engineering duties essentially the same as those for which plaintiff had been responsible prior to his discharge.

On January 7, 1980, plaintiff brought suit against defendants Riegel and James River in the United States District Court for the District of New Jersey. Count one of the complaint asserted claims for unpaid and lost wages and overtime compensation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1976). Count two asserted claims for compensatory and punitive damages for severe emotional distress under New Jersey law. The pretrial order filed July 29, 1980 amended count one to include a complaint for com-

pensatory and punitive damages for severe emotional distress under the ADEA.

On May 1, 1981, defendants filed a five-part motion requesting the court to dismiss and/or grant summary judgment on the different counts for a variety of reasons. On June 22, the judge agreed to dismiss count two on the ground that it failed to state a claim on which relief could be granted or, in the alternative, on the ground that the court should decline to exercise pendent jurisdiction. The court also struck plaintiff's prayer for compensatory and punitive damages for severe emotional stress under the ADEA and the prayer for unpaid overtime compensation.

On May 24, 1982, the court held oral argument on defendants' remaining motions. In a bench ruling issued at the conclusion of the argument, the court granted defendants' motion for summary judgment with respect to count one on the ground that plaintiff had failed to file a timely charge with the Department of Labor before bringing suit. The court observed that the 300 day limitation period for the filing of a charge with the Secretary of Labor began to run on November 11, 1977, the date on which plaintiff had been informed of the dismissal. The court further noted that the charge could not be considered to have been filed until September 25, 1978, the date on which the Department of Labor received it. It therefore concluded that the filing occurred 319 days after the act of discrimination took place. In arriving at this conclusion, the court explicitly rejected plaintiff's plea to invoke the doctrine of equitable tolling, noting that "Mr. Meyer's own statements ... consistently [showed] that he felt he had been the subject of age discrimination ... from the day he was told that he was to be terminated." Plaintiff thereupon appealed.

## II.

In *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir.1977), we concluded that the filing requirements of the ADEA could best be characterized as a statute of limitations rather than a jurisdiction-

al prerequisite to suit. The important humanitarian purposes of the legislation led us to decide that the limitation requirements of the Act may in appropriate instances be subject to tolling or estoppel. 569 F.2d at 192–93. Accordingly, plaintiff's failure to file a timely charge with the Secretary of Labor does not serve to deprive us of jurisdiction. *Accord Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir.1976), *aff'd per curiam by an equally divided court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). Thus, nothing in the statute precludes us from equitably tolling the limitation period.

The case law pertaining to equitable tolling has proliferated rapidly in the past few years. In this appeal, therefore, each side sets forth numerous cases that it claims can plausibly be read to support the spirit of its position. Each side, moreover, makes the most of such cases. A careful analysis of the applicable case law, however, sheds considerable light on this troublesome question.

Although time limitations prescribed by Congress must be treated seriously, in *School District of Allentown v. Marshall,* 657 F.2d 16 (3d Cir.1981), this court observed that among the principal situations in which equitable tolling is appropriate is where "... the defendant has actively misled the plaintiff respecting the cause of action." *Id.* at 20, quoting *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978), in which the Second Circuit interpreted the Supreme Court's most recent discussion of equitable tolling in *Electrical Workers v. Robbins & Meyers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). The discussion in *School District of Allentown* reaffirmed our declaration in *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir.1977), that "cases may arise where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights."

Defendants do not here deny the continuing vitality of this legal principle. Rather, they contend, first, that none of their statements—however false or deceptive—can be said to have induced plaintiff into failing to forthrightly file his claim and, second, that both plaintiff's lingering suspicions concerning his dismissal and his consultations with an attorney themselves preclude the invocation of equitable tolling. We deal with these contentions seriatim.

### A.

Defendants correctly remind us that any alleged misrepresentations made to plaintiff subsequent to September 22, 1978, the date on which he sent off the charge letter to the Department of Labor, could not have misled him vis a vis the filing of the charge.[1] Such a contention, however, is by definition inapplicable to Griffith's letter of January 13, 1978, informing plaintiff that he was dismissed "when the Engineering Department was reorganized." Nor does it apply to defendant James River's alleged surreptitious plan to replace plaintiff with a younger employee. Given plaintiff's allegations, either of these phenomena—viewed in a light most favorable to plaintiff[2]—could have caused him to temporarily defer filing with the Department of Labor. Accordingly, defendants' claim that as a matter of law all their representations elude the principle of *Bonham* and *School District of Allentown* will not wash.

Further, their contention that only "egregious acts of active deception" can toll the limitation period has no support in the law. We are directed to no case in which a court has used a tape measure to determine the

---

1. Such (mis)representations, however, could have substantial effect on the factfinder's assessment of defendants' credibility. For even if deceptions that occur late in the game themselves fail to play a role in the outcome, their very presence could fuel pre-existing skepticism about the way in which the game was conducted.

2. In determining the existence of a disputed issue of material fact on a motion for summary judgment, all inferences, doubts, and issues of credibility should be resolved against the moving party. *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

magnitude of a potential misrepresentation and has then held that a big one tolls but a little one does not. *See Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982) (tolling appropriate if employee's failure to file results from "a deliberate design by the employer or [from] actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.") Even were we to gauge the measure of the alleged misrepresentations in this case, moreover, we would be forced to accept plaintiff's allegation that they were weighty. We could not do otherwise on review of a grant of summary judgment for defendant.

In sum, plaintiff has surmounted his initial hurdle: alleging acts that, taken as alleged, could persuade a court to activate the doctrine of equitable tolling.

### B.

The precise issue before us, then, reduces to whether equitable tolling is inappropriate here because plaintiff has either (a) entertained suspicions that his dismissal was a function of discrimination or (b) discussed the problem with an attorney.[3]

### 1.

The district court rested its disposition of the case on the proposition that a court may not invoke the doctrine of equitable tolling when plaintiff had entertained suspicions about the legality of the dismissal at the time it occurred. On appeal, defendants rely on the same argument. The only case they cite for this specific proposition, however—*Hart v. J.T. Baker Chemical Corp.,* 598 F.2d 829 (3d Cir.1979)—differs in important ways from the case before us.

In *Hart,* plaintiff-employee suspected at the time of her dismissal that gender may have played an operative factor in the discharge. She did not file the required charge letter, however, until 477 days after the discriminatory act allegedly took place. The applicable limitation period had been 180 days. In affirming the district court's rejection of the equitable tolling claim, we noted that "the facts upon which her charge was predicated were known to her on the date of the discharge." 598 F.2d at 834. In short, plaintiff simply did not allege that defendant had anything to do with her untimeliness. The court observed that, had plaintiff inquired into the reasons for her dismissal and then alleged that she had been deceived, an entirely different issue would have been presented. Here, however, plaintiff Meyer alleges precisely what the plaintiff in *Hart* failed to allege: that defendants deceived him into postponing the filing of a claim. Here, too, plaintiff did precisely what the *Hart* court suggests: he asked defendants for an explanation of his dismissal. Thus, *Hart* cannot be read to support the proposition that contemporaneous suspicion itself precludes the invocation of equitable tolling, and the district court erred in uncritically anchoring its grant of summary judgment in this non-existent principle. *See Richards v. Mileski,* 662 F.2d 65 (D.C.Cir.1981) (suit by employee who had been forced to resign in 1955 under false charges of homosexuality and who did not discover until 1978 that federal agents had spread false reports of his homosexuality was not barred on limitations ground even though plaintiff knew in 1955 that the charge was groundless).

### 2.

Defendants cite numerous cases from a wide range of courts, including this one, to support the proposition that equitable tolling may not be invoked in a situation in which plaintiff has consulted a lawyer. Nevertheless, the cases themselves do not support a proposition quite that broad. Rather, they for the most part stand for the laudable notion that a plaintiff who has consulted with an attorney about a potential discrimination claim will not get away with complaining that he failed to understand the requirements and implications of the statute. Unlike plaintiffs in those cases, plaintiff here does not base his argument for equitable tolling on ignorance of

**3.** Defendants also argue that the failure to timely file was due to the inadvertence of plaintiff's counsel, an allegation that counsel denies, which we regard as irrelevant on this appeal.

law. He instead asks us to toll the limitation period because defendants painted a picture so distorted of the ground for his dismissal that the merits of the potential claim remained obscure for a considerable length of time.

No case cited by defendants impels us to reject this request. In fact, at least three cases cited by defendants suggest that where misrepresentation occurs tolling represents an appropriate corrective mechanism, irrespective of the fact that plaintiff sought legal advice. *Bonham, supra,* 569 F.2d at 193; *Maira v. Hooker Chemical and Plastics Corp.,* 26 F.E.P. 254, 256 (W.D.N.Y. 1981); *Bronze Shields Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1085 (3d Cir.1981). Plaintiff persuasively contends that these suggestions indicate that where a defendant misleads a plaintiff he may also mislead plaintiff's lawyer, and in such a case the alleged fraud supersedes the results that ordinarily flow from consultation with an attorney. Such an interpretation of the case law seems to be precisely what we had in mind in *Bonham,* in which plaintiff had secured counsel, when we nevertheless remarked that "cases may arise where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights." 569 F.2d at 193. Such an interpretation also makes sense of the formal standards for equitable tolling we set out in *Marshall, supra,* 657 F.2d at 20. Indeed, perhaps the reason defendant has failed to cite any case in which a court permitted consultation with counsel to negate an allegation of employer deception is that such a holding would be both strikingly inconsistent with the purposes of the antidiscrimination statutes and completely devoid of common sense.

### III.

Our disposition of this case intimates nothing about our views with respect to either the merits of the underlying age discrimination claim or the question of whether plaintiff can in fact prove at trial that any misrepresentation or omission of defendants had an important effect in causing him to postpone filing the charge with the Department of Labor. We hold only that there exist genuine issues of material fact to be resolved before a proper determination of the equitable tolling claim can be made. The district court's grant of summary judgment regrettably shortcircuited the pursuit of such facts.

The judgment of the district court will be reversed and the case remanded for trial.