**Michelle K. WHITCRAFT, as individual and as parental guardian for Ashley Marie Whitcraft, a minor, Plaintiff,**

v.

**TOWNSHIP OF CHERRY HILL, Patrolman Kirk Williams, and Patrolman Louis Citerone, Defendant–Third–Party Plaintiffs,**

v.

**KENNEDY MEMORIAL HOSPITAL UNIVERSITY MEDICAL CENTER—CHERRY HILL DIVISION, John Doe (fictitious person), and Jane Doe (fictitious person), Thirty–Party Defendants.**

**Civil Action No. 94–5566(JBS).**

United States District Court,
D. New Jersey.

Sept. 30, 1996.

Thomas N. Ganiaris, Cherry Hill, NJ, for Plaintiffs.

J.S. Lee Cohen, David A. Clark, Decotiis, Fitzpatrick & Gluck, Teaneck, NJ, for Defendants, Third–Party Plaintiffs.

Megan C. Farrell, Parker, McCay & Criscuolo, Marlton, NJ, for Third–Party Defendants.

## OPINION

SIMANDLE, District Judge.

Plaintiff, Michelle Whitcraft, has brought this suit under 42 U.S.C. § 1983 and various state-law provisions, alleging that defendants, the Township of Cherry Hill ("Cherry Hill") and two Cherry Hill police officers, violated plaintiff's civil and constitutional rights. Defendants, in turn, have filed a third-party complaint against Kennedy Memorial Hospital ("Kennedy Memorial"), seeking indemnification or contribution for any judgment against defendants obtained by plaintiff in this case.

Presently before the Court are a summary judgment motion brought by defendants and a summary judgment motion brought by third-party defendant Kennedy Memorial. As explained more fully herein, defendants' summary judgment motion is granted with respect to plaintiff's § 1983 claims in Counts 1 and 2 because plaintiff has failed to demonstrate that defendants' allegedly unconstitutional conduct was carried out pursuant to a governmental "policy or custom," as required by *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Plaintiff's remaining, state-law claims in Counts 3–7 are dismissed for lack of jurisdiction. Lastly, because all of plaintiff's claims against defendants are dismissed, the summary judgment motion brought by third-party defendant Kennedy Memorial is dismissed as moot.

### Background

On February 27, 1994, at 10:14 p.m., the Cherry Hill Police Department received a phone call from Peter Brice. Brice informed the dispatcher that he had telephoned his former girlfriend, plaintiff Michelle Whitcraft, at her parents' home and found her to be extremely intoxicated and essentially incoherent. Brice explained to the dispatcher that he was concerned for the welfare of plaintiff's five-year-old daughter, Ashley, because Ashley and plaintiff were alone in the house. (Ganiaris Aff., Ex. E, transcript of Brice report to police at 1–3).

In response to Brice's call, defendant patrolman Kirk Williams and defendant patrolman Louis Citerone were sent to the Whitcraft residence. The dispatcher instructed the officers to check on the well-being of Ashley and her possibly intoxicated mother. (Ganiaris Aff., Ex. E, call dispatch at 3–4).

Upon arriving at the Whitcraft residence, the officers knocked on the front door and received no response. (Ganiaris Aff., Ex. B, Citerone deposition at 14–15). Noticing that the lights were on throughout the house, the officers yelled "hello" and "police department" in an attempt to gain the attention of any occupants of the house. (Ganiaris Aff., Ex. A, Williams deposition at 20–21). After again receiving no response, the officers opened the unlocked front door and entered the premises, continuing to announce their presence. (Ganiaris Aff., Ex. B, Citerone deposition at 15–17).

As they entered the house, the officers could hear sound coming from a television set. (*Id.* at 16–17). However, when the officers walked over to the television set, they saw that no one was watching it. (*Id.* at 20). Eventually, the officers walked up the stairs to the second floor of the house and came upon young Ashley, who led the officers into a bedroom in which plaintiff was lying on a bed on top of the blankets. (Ganiaris Aff., Ex. A, Williams deposition at 30). Plaintiff's eyes were shut, but she was fully clothed. (*Id.* at 30–31). The officers were not sure whether plaintiff was sleeping. (Ganiaris Aff., Ex. B, Citerone deposition at 24).

The officers called out plaintiff's name. When plaintiff did not reply, the officers tugged at her ankle and she appeared to awaken. (Ganiaris Aff., Ex. A, Williams deposition at 32). She opened her eyes and tried to get up from the bed, but nearly fell during her attempt. (*Id.* at 32–33). The officers detected a strong smell of alcoholic beverages, and when they questioned plaintiff, she appeared to be physically unable to answer. (*Id.* at 33). Although plaintiff sporadically mumbled in an incoherent manner, for the most part she failed to acknowledge the presence of the officers. (*Id.* at 33–35). She had difficulty walking without assistance, and eventually fell to the floor and began to bang her head on the floor and punch herself. (*Id.* at 34–36). Officer Williams called

for an ambulance, explaining to the dispatcher that an ambulance was needed for a drunk person who also appeared to be emotionally disturbed. (*Id.* at 53).

Officer Williams and Officer Citerone both claim to have heard plaintiff tell the arriving medical personnel that she needed "help." (*Id.* at 97; Ganiaris Aff., Ex. B, Citerone deposition at 43). However, plaintiff does not recall giving her consent to be taken to a hospital, and when the medical team attempted to place plaintiff on a stretcher she kicked in protest. (Df. Br., Ex. C, Whitcraft deposition at 98; Ganiaris Aff., Ex. A, Williams deposition at 96). Eventually the police officers aided the medical team and secured plaintiff to the stretcher through the use of handcuffs. (Ganiaris Af f., Ex. A, Williams deposition at 96).

Plaintiff was taken to the Steininger Center, a crisis center affiliated with Kennedy Memorial. A Steininger staff member determined that plaintiff's blood alcohol content was 0.28%. (Df. Br., Ex. D, Wyatt Affidavit at 2).[1] Plaintiff was medicated and kept in restraints due to her violent behavior. (Df. Br. Ex. F, Medical Reports). She stayed at the hospital overnight and was released the following morning.

Plaintiff alleges that the medication given to her during her stay at the hospital caused harmful side effects, including dizziness, disorientation, and an inability to control the muscles in her jaw. (Compl. at 5). Plaintiff subsequently received medical treatment for those side effects. (Whitcraft Aff., Ex. C, medical bills).

While plaintiff was being taken to the Steininger Center, the Cherry Hill Police Department attempted to make arrangements for the care of plaintiff's daughter, Ashley. Neither Ashley nor Peter Brice was able to provide the police with the phone numbers of any of Ashley's relatives. (Ganiaris Aff., Ex. A, Williams deposition at 41, 94). Thus, when Brice himself volunteered to care for Ashley for the night and Ashley expressed joy in response to that idea, the police released Ashley into Brice's custody. (*Id.* at 94–95).

Following her release from the hospital, plaintiff contacted the police to regain custody of Ashley. The police informed plaintiff that the matter had been referred to the New Jersey Division of Youth and Family Services ("DYFS"). (Ganiaris Aff., Ex. C, Schofield deposition at 32). After making a number of phone calls to DYFS, plaintiff ultimately learned that she was permitted to proceed to Brice's residence to pick up Ashley. (Df. Rep. Br., Ex. A, Whitcraft deposition at 90). According to plaintiff, when she arrived at Brice's residence, Brice was intoxicated and belligerent, and resisted plaintiff's attempts to retrieve her child. (Compl. at 10–11). However, soon thereafter a Cherry Hill police officer arrived and facilitated the transfer of Ashley back to plaintiff. (*Id.* at 11). Although plaintiff alleges that Brice had battered plaintiff on previous occasions, plaintiff does not contend that she or Ashley was physically harmed as a result of Ashley's stay with Brice. (Df. Br., Ex. C, Whitcraft deposition at 66–67).

Plaintiff brought suit against Cherry Hill and patrolmen Williams and Citerone. The individual defendants were sued in their official capacity only. (Df. Br., Ex. J, letter from T. Ganiaris, Esq.). Plaintiff alleged that the Cherry Hill police entered plaintiff's home, detained plaintiff, and separated plaintiff from her daughter in violation of both state and federal law. Because plaintiff sought from defendants damages stemming from allegedly improper treatment that plaintiff received while at Kennedy Memorial, defendants filed a third-party complaint against the hospital and two of its employees.

In their summary judgment motion, defendants argue that they did not violate plaintiff's federal constitutional rights and that plaintiff's § 1983 claims are therefore without merit. Defendants argue in the alternative that plaintiff's § 1983 suit should be dismissed because plaintiff is unable to establish that plaintiff's injuries were caused by the execution of governmental "policy or cus-

---

1. The Court takes judicial notice that this blood alcohol concentration evidences extremely severe intoxication, being almost three times the blood alcohol level sufficient to convict a defendant for driving while intoxicated, namely, 0.10%.

tom," as required by *Monell*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Lastly, defendants contend that if this Court dismisses plaintiff's § 1983 claims, it should decline to exercise its supplemental jurisdiction over plaintiff's state-law causes of action.

## Discussion

### I. *Summary Judgment Standard*

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1030–81 (3d Cir. 1996); *Kowalski v. L. & F Products*, 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511; *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.").

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that part will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552. In such situations, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *Brewer*, 72 F.3d at 329–330 (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.").

The non-moving party, here the plaintiff, "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed.R.Civ.P. 56(e). They must do more than rely only "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (citation omitted). *See also Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more

than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## II. *Plaintiff's § 1983 Claims*

■ 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

It is axiomatic that a municipality, such as defendant Cherry Hill, cannot be held liable under § 1983 on a *respondeat superior* theory of liability. *See Monell,* 436 U.S. 658, 98 S.Ct. 2018. Municipal liability can be imposed under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" of which the plaintiff complains. *Id.* at 694, 98 S.Ct. at 2037–38. "A plaintiff [bringing suit under § 1983] must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir. 1984).

■ The same standards apply to plaintiff's § 1983 claims against patrolmen Williams and Citerone. As noted, plaintiff has sued Williams and Citerone in their official capacity only. As a result, any damage award secured by plaintiff in this case may be executed against the municipality only, and plaintiff's suit is therefore treated as a suit against the municipality only. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, despite the presence of the individual defen-

dants in this case, for plaintiff to prevail she must show that municipal policy or custom was the " 'moving force of the constitutional violation.' " *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2038).

Plaintiff argues that two policies/customs of Cherry Hill caused the alleged constitutional violations in this case. First, plaintiff points to Cherry Hill's alleged "policy" of inadequately training its police officers "as regards handling of inebriated persons, handling child custody matters, rendering medical or health diagnosis, or check Well Beings of Individuals [sic]." (Pl. Br. at 32). Plaintiff argues in the alternative that her constitutional rights were violated as a result of Cherry Hill's "custom" of ignoring its own written protocol concerning child abuse investigations. I will deal with each of these two arguments in turn.

### A. *Inadequate Training of Municipal Police Officers*

The Supreme Court has stated that inadequate police training procedures "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The Court explained, "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S.Ct. at 1205. The Court emphasized that in order for a municipality to be liable under § 1983 for failure to train its employees, the failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by [the] municipality." *Id.*

■ In most cases, a plaintiff may demonstrate a municipality's deliberate indifference to the rights of its inhabitants through one of two means. Deliberate indifference may be established where the harm in question occurred on numerous previous occasions and

municipal officials failed to respond appropriately. *See Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989). Alternatively, "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of [the municipality] to respond will alone support" a finding of deliberate indifference. *Id.*

■ In this case, plaintiff has not brought to the Court's attention any prior incidents that should have caused defendants to believe that Cherry Hill police officers had received inadequate training regarding entering the home of a private citizen without a warrant, dealing with intoxicated persons, or dealing with emergent child-custody issues. Moreover, plaintiff has proffered no evidence tending to show that Cherry Hill's police-training procedures were so deficient and the resulting risk of infringement of constitutional rights so obvious that plaintiff could be charged with awareness of the training procedures' inadequacy. In short, plaintiff has come forward with no evidence of deficient training. Even assuming *arguendo* that the training practices of the Cherry Hill Police Department were deficient in some manner, no evidence has been presented that would enable a reasonable juror to conclude that defendants were deliberately indifferent to that deficiency.

### B. *Cherry Hill's Failure to Adhere to its Policy Concerning Child–Abuse Cases*

■ Plaintiff also argues that the Cherry Hill Police Department's "custom" of failing to follow its own protocol concerning child-abuse cases caused the alleged constitutional violations in this case. Again, however, plaintiff fails to present evidentiary support for her argument. Plaintiff focuses on the fact that in this case the Cherry Hill Police Department did not follow its own written guidelines regarding the need to inform DYFS immediately when police remove a child from the custody of a parent. (The Cherry Hill Police Department notified DYFS of Ashley's temporary living arrangements on February 28, one day after the police entrusted Ashley to the temporary care of Brice). Plaintiff attempts to demonstrate that this conduct represents a "cus-

tom" on the part of Cherry Hill by presenting to the Court an affidavit from plaintiff's attorney. The affidavit states that Edward Morton, a former employee of the Cherry Hill Police Department, told plaintiff's counsel that Morton is aware of "several other incidents" in which the Cherry Hill Police Department failed to inform DYFS in a timely manner that a minor had been placed with a third party.

However, the affidavit is devoid of the information needed to determine whether the Cherry Hill Police Department indeed had a "custom" of not following its own guidelines concerning immediate notification of DYFS in appropriate situations. For example, this Court is unable to determine whether the prior incidents to which Morton refers were similar to the case currently before the Court. The affidavit is similarly ambiguous concerning the number of such incidents.

Moreover, Morton now lives in Arizona, and there has been no showing that plaintiff would be able to present his testimony at trial. This Court is therefore reluctant to consider the hearsay statements of plaintiff's counsel in ruling on defendants' summary judgment motion. *See J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir.1990) (noting that hearsay evidence produced in affidavit may be considered in ruling on summary judgment motion if declarant would be available at trial), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). This Court concludes that plaintiff has not presented enough evidence to enable a reasonable fact-finder to conclude that the alleged "custom" of Cherry Hill Township actually existed.

■ Moreover, a police department's deviation from an internal guideline does not itself trigger a violation of constitutional dimension. *See Daniels v. Williams,* 474 U.S. 327, 332–33, 106 S.Ct. 662, 665–66, 88 L.Ed.2d 662 (1986); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir.1988); *Jones v. Chieffo,* 833 F.Supp. 498, 505–506 (E.D.Pa.1993). It is assumedly a better practice to involve DYFS at the earliest moment, especially when the child's parent is so intoxicated as to be incoherent and no known relative can be found. That the police department notified

DYFS the next day, rather than at 11:00 p.m. on the night of this medical and family emergency, gives rise to a § 1983 cause of action only if plaintiff and her daughter had some right of constitutional dimension to overnight placement with DYFS rather than with a close family friend while plaintiff detoxified in the crisis clinic. No such right has been identified or recognized.

Even if one assumes that plaintiff has made a sufficient showing of Cherry Hill's custom of not notifying DYFS in a timely manner in certain child-custody cases, and that such custom violates some protected liberty interest, plaintiff is nonetheless unable to satisfy the causation requirement of § 1983 in this case. *See City of Canton*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (noting that § 1983 plaintiff must demonstrate existence of "direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.") (plurality opinion of Rehnquist, C.J.). Plaintiff has made no attempt to explain how the alleged constitutional violations in this case would have been avoided if DYFS had been apprised of the separation of Ashley from her mother on February 27 instead of February 28. No reasonable juror could conclude that a "direct causal link" exists between the alleged violations of plaintiff's constitutional rights and the Cherry Hill Police Department's alleged custom of not communicating with DYFS in accordance with the department's own protocol.

In sum, assuming *arguendo* that a constitutional right to temporary DYFS placement exists in this circumstance (which it does not), and assuming further that plaintiff could persuade a reasonable juror that her or her child's constitutional rights were violated in this case, she could not establish that that violation was caused by a "custom or policy" of Cherry Hill. As a result, defendants' summary judgment motion is granted with respect to plaintiff's § 1983 claims.

### III. *Plaintiff's State–Law Causes of Action*

Federal courts traditionally have dealt with nonfederal claims under the doctrines of ancillary and pendent jurisdiction, which refer to a court's ability to exercise jurisdiction over an independent claim or party where the court would otherwise be unable to assert jurisdiction. Congress has since codified the doctrines of ancillary and pendent jurisdiction through the Judicial Improvement Act of 1990 under the heading "supplemental jurisdiction." *See* 28 U.S.C. § 1367. The relevant section of that statute provides as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). This statutory provision affirmatively provides district courts with jurisdiction to entertain claims that they otherwise would hear only through the exercise of their ancillary or pendent jurisdiction.

Section 1367(c) enumerates four circumstances in which a district court may decline to exercise its supplemental jurisdiction over a claim:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This case implicates the third scenario. This Court has original jurisdiction over plaintiff's § 1983 claims only, *see* 28 U.S.C. § 1331 (providing for federal court jurisdiction in "federal question" cases), and, as explained *supra*, all of those claims are dismissed in connection with defendants' summary judgment motion. In such instances in which the district court has dismissed all claims over

which it has original jurisdiction, courts typically have declined to exercise supplemental jurisdiction over remaining, state-law claims. *See, e.g., Ricci v. Gooberman*, 840 F.Supp. 316 (D.N.J.1993); *Bermingham v. Sony Corp. of Am.*, 820 F.Supp. 834 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994).

■ The remaining counts in plaintiff's complaint (Counts 3 through 7) allege that defendants denied plaintiff numerous rights guaranteed to her by the New Jersey Constitution and the New Jersey common law. Similarly, the third-party complaint filed by defendants seeks indemnification and contribution under New Jersey statutory and decisional law. There is no remaining federal question, and plaintiff has proposed no sufficient reason for this Court to exercise supplemental jurisdiction in the face of § 1367(c)(3). Moreover, claims relating to the health care provided to plaintiff by third-party defendant Kennedy Memorial Hospital do not directly arise from the conduct of police officers that gave rise to the alleged federal question causes of action in this case; issues such as the appropriateness of the course of medical treatment arise exclusively from dealings between physician and patient under the law of New Jersey. The remaining claims, all arising at state law, can be brought in an appropriate state court. This Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

### IV. *Kennedy Memorial's Summary Judgment Motion*

Although defendant Cherry Hill has filed a third-party complaint seeking indemnification and contribution from Kennedy Memorial and two of its employees, plaintiff did not bring any direct claims against those third-party defendants. Accordingly, because Cherry Hill's summary judgment motion is granted with respect to all of plaintiff's federal claims, and because the Court declines to exercise supplemental jurisdiction over the remaining state law claims, the summary judgment motion brought by Kennedy Memorial is moot, and will be dismissed as such.

The accompanying Order is entered.

### *ORDER*

This matter having come before the Court upon the motion of defendants for summary judgment, as well as upon the motion of third-party defendants for summary judgment; and the Court having considered the submissions of the parties; and for the reasons stated in the opinion of today's date;

IT IS this 30th day of September, 1996 hereby

ORDERED that defendants' motion for summary judgment is hereby ***GRANTED*** as to Counts One and Two; and it is

FURTHER ORDERED that Counts Three through Seven are hereby ***DISMISSED*** for lack of supplemental jurisdiction, without prejudice to plaintiff's right to timely file such claims in a State Court of competent jurisdiction; and it is

FURTHER ORDERED that third party defendants' motion for summary judgment is hereby ***DISMISSED***, as moot.