Lisa C. EPPS, Plaintiff,

v.

**CITY OF PITTSBURGH, Defendant.**

**No. Civ.A. 98–584.**

United States District Court,
W.D. Pennsylvania.

Dec. 7, 1998.

Anthony M. Mariani, Martin A. Dietz, Pittsburgh, PA, for plaintiff.

Jacqueline R. Morrow, Marianne S. Malloy, Randall C. Marshall, City of Pittsburgh, Department of Law, Pittsburgh, PA, for defendant.

## MEMORANDUM ORDER

STANDISH, District Judge.

On March 30, 1998, this case was referred to United States Magistrate Judge Ila Jeanne Sensenich for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on November 10, 1998, recommended that the Motion to Dismiss filed by Defendant be granted. The parties were allowed ten (10) days from the date of service to file objections. Service was made on all parties and objections and response to objections have been filed to the report and recommendation. After *de novo* review of the pleadings and documents in the case, together with the report and recommendation, objections and response to objections thereto, the following order is entered:

AND NOW, this 7th day of December, 1998;

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant is granted.

The Report and Recommendation of Magistrate Judge Sensenich, dated November 10, 1998 is adopted as the opinion of the court.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SENSENICH, United States Magistrate Judge.

### I. RECOMMENDATION

It is recommended that the Motion to Dismiss filed by Defendant be granted.

### II. REPORT

Plaintiff Lisa C. Epps brings this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (Title VII), alleging that she was subjected to a sexually discriminatory policy and a sexually hostile work environment in her job as a firefighter for the Defendant City of Pittsburgh.

Plaintiff was enrolled as a recruit in the Bureau of Fire Academy of the City of Pittsburgh on April 15, 1990, and she graduated in October 1990 and was assigned as a firefighter to Engine and Truck Company No. 13, C–Platoon, at 200 Flowers Avenue in the Hazelwood section of the City of Pittsburgh, where she remains. (Compl.¶ 6.) She alleges that, since women began working as firefighters in the City of Pittsburgh fifteen years ago, they have never been given separate sleeping quarters, bathroom or shower facilities. (Compl.¶ 7.) She also alleges that it is common practice for the male firefighters to sleep in their underwear in the bunk room filled with cots. (Compl.¶ 9.)

Since becoming a firefighter, Ms. Epps has declined to sleep in the bunk room under the conditions as described above and has further declined to use the common shower/bathroom facilities in the company of male firefighters. Although her male co-firefighters have acted and currently act in a manner so as to allow Ms. Epps to maintain her privacy and dignity when she is in need of using shower/bathroom facilities, no such accommodation has been and/or is available in the bunk room. Consequently, in order to attempt to maintain her privacy and dignity as a woman, Ms. Epps, during her designated sleep periods, initially slept on an old couch in the bay area (garage) of Engine Company No. 13, literally behind a fire engine. The Captain of C–Platoon, Ms. Epps' direct supervisor while working for the C–Platoon, allowed Ms. Epps to do so.

(Compl.¶ 11.)

Although she was assigned to C–Platoon, during 1995 Plaintiff occasionally worked overtime on the D–Platoon. (Compl.¶ 12.) She alleges that, beginning in 1995, she was subjected to numerous acts of sexual discrimination and harassment by the captain of D–Platoon. (Compl.¶ 14.) Specifically, she alleges that:

a. on or about May 29, 1995, the D–Platoon Captain, in the presence of other employees of the Bureau of Fire, dragged Ms. Epps' couch out of the bay area of the fire house and onto the street and then cut it to pieces using a Bureau of Fire chain saw;

b. on or about July 25, 1995, while Ms. Epps was sleeping on a lounge chair during a time for which Ms. Epps was designated to sleep, (because the D–Platoon Captain had previously destroyed her couch) the D–Platoon Captain kicked the lounge chair in which Ms. Epps was sleeping and ordered Ms. Epps to get up. The D–Platoon Captain then instructed Ms. Epps that she must sleep in the bunk room with the men;

c. after Ms. Epps indicated that she did not want to sleep in the bunk room with the men, the D–Platoon Captain belittled, berated and humiliated Ms. Epps in presence of other firefighters regarding her desire not to sleep in the bunk room with the men and her having slept in the lounge chair instead;

d. in mid December of 1995, Ms. Epps' name was put on a "Captain Chaos" hit list, a list attributable to the D–Platoon Captain which set forth the names of Bureau of Fire employees whom the D–Platoon Captain disliked;

e. on or about January 4, 1996, Ms. Epps was told by another firefighter that the D–Platoon Captain used blatant racial slurs in referring to Ms. Epps and also indicated, with regard to getting rid of women firefighters at Engine Company No. 13, that there were "two down and one to go", the "one" referring to Ms. Epps; and

f. after Ms. Epps complained to other city officials about the D–Platoon Captain's conduct, the D–Platoon Captain threatened other firefighters with regard to their reporting and/or confirming to the D–Platoon Captain's superiors the acts of the D–Platoon Captain with regard to Mr. Epps.

(Compl.¶ 15.) In addition to these incidents, Plaintiff alleges that, sometime in 1996, she discovered that a ball of paper had been put into the diaphragm of her breathing apparatus, which would have prevented it from functioning. As a result, she decided not to work overtime, out of fear for her personal safety. (Compl.¶ 16.)

Plaintiff sought to have these matters resolved internally at the Bureau of Fire. She alleges that: ·

On or about August 31, 1995, Ms. Epps filed a complaint with the Pittsburgh Bureau of Fire setting forth the complaints of harassment and discrimination against her that had occurred by that time. On November 8, 1995, Ms. Epps was advised by the Acting Chief that her complaint was forwarded to the Office of Professional Responsibility of the City of Pittsburgh. Ms. Epps was subsequently led to believe by a member of the Office of Professional Responsibility that her complain had been referred to the Equal Employment Opportunity Commission (hereinafter, "EEOC"). Subsequently, Ms. Epps' complaint was transferred to the City of Pittsburgh, Department of Personnel and Civil Service Commission.

On May 20, 1997, Ms. Epps was requested to and did provide a formal statement to the Department of Personnel and Civil Service Commission. On October 13, 1997, the City of Pittsburgh, Department of Personnel and Civil Service Commission, issued findings which substantiated Ms. Epps' claims.

On or about November 14, 1997, Fire Chief Charlie Dickinson (hereinafter, "Chief Dickinson") met with Ms. Epps and her father regarding Ms. Epps' complaints. Although he apologized for the conduct of the D–Platoon Captain, Chief Dickinson has taken no other action. No other responsible person of the City of Pittsburgh has taken any action with regard to the sleeping quarters and/or shower/bathroom facilities at Engine Company No. 13 or any other fire house.

Shortly after speaking to Chief Dickinson on November 14, 1997, Ms. Epps went to the Office of EEOC regarding her complaint. However, Ms. Epps was informed by a member of the EEOC that the City of Pittsburgh had not filed a complaint on her behalf and that the time for filing such a complaint may have expired.

(Compl.¶¶ 19–22.)

Plaintiff filed her complaint in this action on March 27, 1998. Count I alleges claims of a sexually discriminatory practice and a sexually hostile work environment in violation of Title VII. Count II alleges that Defendant

denied her equal protection of the laws under the Fourteenth Amendment of the United States Constitution, and it is brought under § 1983. On May 19, 1998, Defendant filed a Motion to Dismiss.

### Standard for 12(b)(6) Dismissal

A motion to dismiss must be viewed in the light most favorable to plaintiff and all well-pleaded allegations of the complaint must be accepted as true. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). *See also National Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Defendant argues that the claims should be dismissed because: 1) Plaintiff has failed to satisfy the Title VII prerequisite of filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC); 2) Plaintiff's hostile work environment claim is insufficient because it alleges only that Defendants had a facially neutral policy of failing to provide separate sleeping, shower and bathroom facilities for women; 3) Plaintiff's allegations of sexual harassment by the fire captain are insufficient because she mentions only a few isolated incidents; 4) Plaintiff cannot state a claim under § 1983 for violations of state law; 5) Plaintiff's § 1983 claim is untimely because she alleges that the actions of the fire captain occurred on or before January 1996 and this complaint was not filed until March 27, 1998; and 6) Plaintiff's § 1983 equal protection claim is insufficient because she has failed to allege the existence of purposeful discrimination, not merely facially neutral policies concerning separate facilities.

Plaintiff argues that: 1) the EEOC filing requirement may be equitably tolled in a situation in which the defendant's actions are responsible for a plaintiff's delays; 2) the claims concerning the facilities are sufficient as disparate impact claims alleging a facially neutral policy that adversely affects the protected group Plaintiff represents; 3) Plaintiff's allegations concerning the D–Platoon Captain sufficiently state a claim of a sexually hostile work environment; 4) Plaintiff's § 1983 claim is not based on violations of state law; 5) the course of conduct alleged extends the statute of limitations to the date on which the complaint was filed; and 6) Plaintiff has stated a claim of purposeful discrimination based upon the Defendant's policy of deliberate indifference to her privacy rights.

### Count I—Title VII

In Count I, Plaintiff alleges a claim of disparate impact discrimination based on the Fire Bureau's policy of not having separate sleeping, shower and bathroom facilities for women firefighters, and a claim of sexually hostile environment based on the actions of the D–Platoon Captain. Unfortunately, shocking as Plaintiff's claims are, they must be dismissed because she did not comply with the procedural requirement that she file a charge of discrimination with the EEOC. Therefore, the Court need not reach the issues of whether she has sufficiently alleged claims of disparate impact and a sexually hostile environment under Title VII.

### Failure to File Charge With EEOC

The Court of Appeals recently stated that "federal courts lack jurisdiction to hear a Title VII claim, unless the plaintiff has filed a charge with the EEOC." *Woodson v. Scott Paper Co.,* 109 F.3d 913, 926 (3d Cir.) (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)), *cert. denied,* —— U.S. ——, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997). The court further noted that:

A claimant cannot file a charge with the EEOC in a state, such as Pennsylvania, that provides an administrative remedy for employment discrimination, unless the charge has been filed first with the appro-

priate state agency and either (1) 60 days have elapsed; or (2) the state agency has terminated its proceedings. 42 U.S.C. § 2000e–5(c).

Under the worksharing agreement, a claim that is filed first with the EEOC can be processed by the EEOC, without being investigated as an initial matter by the PHRC. Through this worksharing agreement, therefore, Pennsylvania has waived its statutory right to initially process discrimination claims, and hence this agreement operates to "terminate" the PHRC proceedings with respect to the EEOC. In other words, the worksharing agreement allows a plaintiff to proceed in court under Title VII without first filing with the PHRC.

*Id.* (citations omitted).[1]

■ Plaintiff argues that the Supreme Court has held that "the filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (footnote omitted). However, she has not cited, and this Court has not found, a case that supports the proposition that a plaintiff who *never* submits a charge to the EEOC can proceed in federal court with her Title VII claim.

Plaintiff argues that the Court of Appeals has held that:

there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.1994) (citing *School Dist. of City of Allentown v. Marshall*, 657 F.2d 16, 19–20 (3d Cir.1981)). However, with respect to the first situation, the court held that "the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision." *Id.* (citing *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984)). That situation does not apply to this case. Although Plaintiff argues that she was misled by the Office of Professional Standards (OPS), this related to whether a formal written complaint had been sent to the EEOC, not the reason for her treatment at the workplace.

Plaintiff does not argue that the second situation applies to this case, in that she was prevented "in some extraordinary way" from asserting her rights. Finally, Plaintiff does not argue that she asserted her rights mistakenly in the wrong forum. In addition, as noted above, all of these situations concern the tolling of the period in which Plaintiff should have filed a charge with the EEOC. They do not excuse a plaintiff from the requirement of filing a complaint with the agency prior to bringing suit in federal court. Although the result in this case is harsh, Plaintiff unfortunately has not satisfied the procedural requirements for bringing suit under Title VII.[2] Therefore, with respect to Count I of the complaint, Defendant's Motion to Dismiss should be granted.

### Count II—§ 1983 Claims

In Count II, Plaintiff raises § 1983 claims under the Fourteenth Amendment's Equal Protection Clause relating to the sexually hostile environment she suffered as a result

---

1. The PHRC is the Pennsylvania Human Relations Commission, the state agency responsible for investigating discrimination claims.

2. Plaintiff alleges that the policy of not providing separate facilities is still in place. (Compl.¶¶ 7–

8.) Therefore, there appears to be no reason why she cannot now file a charge with the EEOC challenging this practice and then bring suit if the agency is unable to resolve the matter.

of the actions of the D–Platoon Captain and the policy of the Fire Bureau of not having separate sleeping, shower and bathroom facilities for women firefighters. For the reasons that follow, the claim concerning the actions of the D–Platoon Captain is barred by the running of the statute of limitations, and the allegations concerning the Fire Bureau's policy do not state a claim of "purposeful discrimination" for purposes of § 1983.

*Statutes of Limitations for Civil Rights Claims*

Because Congress did not establish a statute of limitations for civil rights claims under 42 U.S.C. § 1983, federal courts "borrow" state statutes of limitations governing analogous causes of action. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Under Pennsylvania law, the statute of limitations for personal injuries is two years, and that statute is applied to § 1983 claims. *Nelson v. County of Allegheny*, 60 F.3d 1010, 1012 (3d Cir. 1995), *cert. denied*, 516 U.S. 1173, 116 S.Ct. 1266, 134 L.Ed.2d 213 (1996). See 42 Pa.C.S. § 5524(2).

Thus, Plaintiff's complaint, which was filed on March 27, 1998, raises timely § 1983 claims only if those claims accrued on or after March 27, 1996. However, the complaint clearly indicates that Plaintiff's § 1983 hostile environment cause of action arises out of the incidents ascribed to the D–Platoon Captain, which occurred in 1995 and up until January 4, 1996. Thus, the § 1983 equal protection claim based upon these incidents is barred by the running of the two-year statute of limitations.

Plaintiff argues that the continuing violations theory tolls the running of the statute, citing *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of America*, 927 F.2d 1283 (3d Cir.1991). However, in that case, the Court of Appeals held that, "when a defendant's conduct is part of continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* at 1295 (citing *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1129 (3d

Cir.1988)). In this case, the last act Plaintiff complains of occurred on January 4, 1996 (Compl.¶ 15(e)). Thus, even applying the continuing violations theory to these facts, the allegations concerning the conduct of the D–Platoon Captain are untimely.

*Purposeful Discrimination*

Plaintiff also alleges that the Fire Bureau's policy of not having separate sleeping, shower and bathroom facilities for women firefighters violates the Equal Protection Clause. However, "[t]o prevail on her § 1983 equal protection claim, [a plaintiff is] required to prove that she was subjected to 'purposeful discrimination' because of her sex." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir.1997) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir.1992)). The Court of Appeals has noted that

> the Supreme Court held in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), that intent is a *prima facie* element of any Constitution-based civil rights claims of discrimination, and thus the Supreme Court distinguished the constitutional standard for discrimination from the standard promulgated under Title VII. The Court held that disparate impact, without more, will not trigger strict scrutiny of racial classifications, unless the disparate impact cannot be rationally explained on non-racial grounds.... ("intent" for the purposes of an equal protection claim means that the City "selected or reaffirmed a particular course of action at least in part *because of*, not merely *in spite of*, its adverse effects upon an identifiable group").

*Commonwealth of Pennsylvania v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir.1993) (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)) (citations omitted) (emphasis in original). The Supreme Court has extended the holding in *Washington v. Davis* to constitution-based civil rights claims alleging gender discrimination. *See Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 273–74, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). In *Horner v. Kentucky High Sch. Athletic*

*Ass'n,* 43 F.3d 265, 276 (6th Cir.1994), the court stated: "When a facially neutral rule is challenged on equal protection grounds, the plaintiff must show that the rule was promulgated or reaffirmed *because of,* not merely in spite of, its adverse impact on persons in the plaintiff's class." (Emphasis in original.) Thus, the disparate impact of an athletic association's policy of sanctioning fewer sports for girls than for boys did not constitute intentional discrimination under the Equal Protection Clause.

Plaintiff alleges that the actual policy and practice of the City of Pittsburgh of not providing separate sleeping, shower and bathroom facilities for female firefighters "engender, permit and condone sexual harassment and/or sexual discrimination in the work place." (Compl.¶¶ 28, 29.) Although this allegation would be sufficient to state a disparate impact discrimination claim under Title VII, it does not allege that the policy was developed *because of* rather than in spite of its impact on females. Therefore, the complaint does not allege purposeful discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Therefore, with respect to Count II of the complaint, the motion to dismiss filed by Defendant should be granted.

In conclusion, it is recommended that the Motion to Dismiss filed by Defendant be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

November 10, 1998.